1   William L. Miltner, Esq. SBN 139097
    Walter E. Menck, SBN 153026
2   MILTNER & MENCK, APC
    ATTORNEYS AT LAW
3   Emerald Plaza
    402 West Broadway, Suite 800
4   San Diego, California 92101
    Telephone (619) 615-5333
5   Telefax (619) 615-5334

6   Attorneys for QIANTU MOTOR (SUZHOU) LTD., a limited liability company registered in
7   the Peoples Republic of China

8                       **UNITED STATES DISTRICT COURT**

9                      **SOUTHERN DISTRICT OF CALIFORNIA**

10  MULLEN TECHNOLOGIES, INC., a          )   CASE NO. **'19CV1979 W    AHG**
    California corporation,                )
11                                         )   **COMPLAINT FOR EQUITABLE**
                                           )   **RELIEF AND/OR DAMAGES:**
12             Plaintiff,                   )
                                           )   **1.   BREACH OF WRITTEN**
13  v.                                     )        **CONTRACT;**
                                           )   **2.   DECLARATORY RELIEF**
14  QIANTU MOTOR (SUZHOU) LTD., a          )   **3.   REFORMATION**
    limited liability company registered in )  **4.   RESCISSION**
15  Peoples Republic of China; and DOES 1- )   **5.   FRAUD**
    50,                                    )   **6.   STATUTORY VIOLATION -**
16                                         )        **B&P CODE §17200**
                                           )
17             Defendants.                 )   Demand for Jury Trial
                                           )
18  —————————————————————————— )

19                                **PARTIES**

20      1.  Plaintiff MULLEN TECHNOLOGIES, INC. (hereinafter referred to as "Plaintiff"

21  or "MULLEN") is, and at all relevant times was, a California corporation as registered with

22  the Secretary of State and operating within the County of San Diego, California.

23      2.    Plaintiff is a licensed electric vehicle manufacturer that is in the business of

24  providing engineering support, assembling and distribution of high performance electric

25  vehicles in San Diego and California.

26      3.  Defendant QIANTU Motor (Suzhou) Ltd., is a limited liability company registered

27  in the Peoples Republic of China (hereinafter referred to as "QIANTU").  QIANTU has

28  designed and developed vehicle kits for a purely electric high-performance sports car based

                                        1
                                   **COMPLAINT**

1  on QIANTU's vehicle known as the "K50," which is currently being sold in China and plans
2  to sell kits exclusively to MULLEN within a specified territory.

3       4.       Plaintiff is informed and believes and on that basis alleges that Defendant
4  QIANTU, is and at all relevant times was, operating as a business entity in Southern
5  California, and existing under the laws of the State of California.  All alleged documents and
6  purported agreements were signed in this jurisdictional area.  All acts stated in this complaint
7  were to be performed in this jurisdictional area, and this is the proper venue for this lawsuit.

8       5.       The true names and capacities of defendants named as Doe 1 through Doe 50,
9  inclusive, are presently unknown to Plaintiff. Plaintiff will amend this complaint, setting forth
10 the true names and capacities of these fictitious defendants when they are ascertained.
11 Plaintiff is informed and believes and on that basis alleges that each of the fictitious
12 defendants has participated in the acts alleged in this complaint to have been done by the
13 named defendants.

14      6.       Plaintiff is informed and believes and on that basis alleges that, at all relevant
15 times, each of defendants, whether named or fictitious, was the agent or employee of each of
16 the other defendants, and in doing the things alleged to have been done in the complaint, acted
17 within the scope of such agency or employment, or ratified the acts of the other.

18      7.       Plaintiff is informed and believes that each of the employees named herein is
19 an officer with supervisory authority to make decisions affecting company policy for each of
20 the company employers.

21                                **JURISDICTION AND VENUE**

22      8.       Plaintiff does business in San Diego and entered into purported agreements,
23 which are the subject of this lawsuit in this jurisdiction and venue.

24      9.       Jurisdiction and venue are based on 28 U.S.C. §1332, et seq. because Defendant
25 QIANTU MOTOR (SUZHOU) LTD. is a limited liability company registered in the Peoples
26 Republic of China, which is a foreign business organization.  Pursuant to Article III, § 2 of
27 the United States Constitution, the lawsuit may be filed in this Court.
28 / / /

1    10.    Plaintiff exclusively is alleging causes of action for California state law and is

2    not seeking recovery under any federal statutes, codes or regulations by and through this

3    lawsuit.

4                              **GENERAL ALLEGATIONS**

5    11.    QIANTU and MULLEN (hereinafter sometimes referred to as "THE

6    PARTIES") expressed an interest in working together to develop and sell electric high-

7    performance sports cars based on the vehicle known as the "K50", which is currently being

8    sold in China.  They engaged in negotiations toward forming an agreement between them for

9    that purpose.

10    12.    THE PARTIES caused to be drafted a 42-page document with blank exhibits

11    for the purpose of memorializing a future agreement for that purpose (hereinafter referred to

12    as "THE AGREEMENT").  It is intended to be appended here as Exhibit 1. However, Exhibit

13    1 is not attached due to confidential and proprietary business information, which may be

14    contained in it. As a courtesy to QIANTU, all such information is not attached or made public.

15    It will be produced under seal pursuant to mutual agreement of THE PARTIES. Per THE

16    AGREEMENT, THE PARTIES agreed that QIANTU would provide vehicle kits to

17    MULLEN, and that MULLEN would provide engineering support, as well as to assemble and

18    distribute the vehicles in Southern California. MULLEN agree to pay QIANTU for the kits

19    based on a specified schedule. THE PARTIES mutually agreed that THE AGREEMENT

20    would be amended to add specific schedules for mutual performance pursuant to mutual

21    agreement. The mutual agreement to subsequently amend the schedule was essential to THE

22    AGREEMENT because it was intended to specify the quantities of vehicle kits and amounts

23    of money to be paid on a specific schedule. THE PARTIES intended that the amendments or

24    modifications would reflect their mutual agreement to express the schedule upon which the

25    vehicle kits would be delivered and payments made.

26    13.    On or about May 25, 2019, THE PARTIES signed the 42 page document known

27    as THE AGREEMENT as evidence of their mutual intent to enter into an agreement.

28    / / /

1      14.     On or about May 25, 2019, THE PARTIES signed THE AGREEMENT even

2 though it did not include the schedule for payments, amount of payments, schedule for

3 delivery of the kits and amount of kits. Instead the exhibits were blank as will be shown in

4 Exhibit 1, which shall be produced under seal upon mutual agreement of THE PARTIES.

5      15.     MULLEN alleges that THE PARTIES agreed to do business, and that THE

6 PARTIES agreed to add, at a later date, a mutually agreeable schedule of payments, amount

7 of payments, schedule for delivery of the kits and amount of kits.

8      16.     Thereafter, on or about August 1, 2019, QIANTU unilaterally added the exhibits

9 to THE AGREEMENT, without the mutual agreement of MULLEN. MULLEN discovered

10 that QIANTU unilaterally added these terms and conditions on or about August 1, 2019.

11                        **FIRST CAUSE OF ACTION**

12                         **BREACH OF CONTRACT**

13          **(AGAINST QIANTU AND DOES 1 THROUGH 50)**

14      17.     Plaintiffs incorporate herein by reference each and every paragraph and

15 allegation of this Complaint as though fully set forth herein.

16      18.     THE PARTIES agreed to enter into THE AGREEMENT as written on or about

17 May 25, 2019. It expressed THE PARTIES' agreement to work together such that QIANTU

18 would provide high-performance electric car kits to MULLEN in consideration for payment

19 from MULLEN over time. THE PARTIES agreed that MULLEN would provide engineering

20 support, assemble and distribute the cars. THE PARTIES intended to mutually agree to the

21 specific payment and delivery schedule at a later date.

22      19.     Thereafter, on or about August 1, 2019, QIANTU unilaterally added the exhibits

23 to THE AGREEMENT. MULLEN discovered that QIANTU unilaterally added these terms

24 and conditions on or about August 1, 2019.

25      20.     MULLEN performed as agreed, and fulfilled its obligations and complied with

26 any and all conditions of THE AGREEMENT that MULLEN was required to perform

27 pursuant to THE AGREEMENT.

28 / / /

**COMPLAINT**

21.   Alternatively, MULLEN was prevented from performing when QIANTU unilaterally changed the terms and conditions of the THE AGREEMENT by attaching exhibits to it which did not conform with the terms and conditions to which THE PARTIES previously agreed.  MULLEN did not agree to these payments or the accelerated schedule, which were unilaterally interposed by QIANTU.

22.   On and after August 1, 2019, QIANTU prevented MULLEN from performing as agreed by demanding payment of excessive amounts on an accelerated schedule to which MULLEN had never agreed.

23.   On and after August 1, 2019, QIANTU breached THE AGREEMENT by failing to perform without justification or excuse.  QIANTU failed and refused to communicate with MULLEN to obtain a mutually agreeable schedule for payments and deliveries.  QIANTU unilaterally interposed an accelerated payment schedule with excessive payments after THE PARTIES entered into THE AGREEMENT. QIANTU demanded that MULLEN make excessive payments pursuant to an accelerated schedule to which MULLEN had not previously agreed.

24.   As a direct and legal result of QIANTU's conduct, MULLEN suffered damages when QIANTU failed to perform, or prevented MULLEN from performing as agreed.

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE §1062
## (AGAINST QIANTU AND DOES 1 THROUGH 50)

25.   Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

26.   An actual good faith dispute exists between THE PARTIES in that QIANTU alleges that there is an enforceable written agreement between THE PARTIES as memorialized by Exhibit 1, which shall be produced under seal upon mutual agreement of THE PARTIES. However, a true interpretation of THE AGREEMENT is that the terms and conditions were not agreed upon by THE PARTIES at the time THE AGREEMENT was executed.  THE PARTIES intended to be bound by mutually agreeable terms and conditions,

se 3:19-cv-01979-W-DEB   Document 1   Filed 10/11/19   PageID.6   Page 6 of 9

1    which have not been reduced to writing.

2       27.     As such, an actual controversy has arisen between the parties in relation to the

3 interpretation of and performance of THE AGREEMENT, in that THE PARTIES are in

4 dispute as to provisions related to the schedule, payment amount, and delivery of the kits.

5       28.     In light of the good faith dispute between THE PARTIES, MULLEN seeks from

6 this Court a ruling in equity that there is no enforceable agreement between THE PARTIES.

7 **THIRD CAUSE OF ACTION**

8 **REFORMATION**

9 **(AGAINST QIANTU AND DOES 1 THROUGH 50)**

10       29.   Plaintiffs incorporate herein by reference each and every paragraph and

11 allegation of this Complaint as though fully set forth herein.

12       30.     The Reformation cause of action accrued on or about August 1, 2019, in that

13 MULLEN discovered the facts constituting the additional terms and conditions mistakenly

14 or fraudulently added to THE AGREEMENT by QIANTU on that date when QIANTU

15 forwarded the exhibits to MULLEN. The discovery date is within one year of the date of

16 filing this Complaint.

17       31.     MULLEN asserts the instant claim for reformation, pursuant to California Code

18 of Civil Procedure §337©, which establishes a four-year statute of limitations for actions

19 seeking reformation of a written contract.

20 **FOURTH CAUSE OF ACTION**

21 **RESCISSION PURSUANT TO CODE OF CIVIL PROCEDURE §337**

22 **(AGAINST QIANTU AND DOES 1 THROUGH 50)**

23       32.   Plaintiffs incorporate herein by reference each and every paragraph and

24 allegation of this Complaint as though fully set forth herein.

25       33.     The Rescission cause of action accrued on or about August 1, 2019, in that

26 MULLEN discovered the facts constituting the additional terms and conditions mistakenly

27 or fraudulently added to THE AGREEMENT by QIANTU on that date when QIANTU

28 forwarded the exhibits to MULLEN. The discovery date is within one year of the date of

6
**COMPLAINT**

1    filing this Complaint.

2         34.    MULLEN asserts the instant claim for reformation, pursuant to California Code

3    of Civil Procedure §337(c), which establishes a four-year statute of limitations for actions

4    seeking rescission of a written contract.

5                              **FIFTH CAUSE OF ACTION**

6                                      **FRAUD**

7               **(AGAINST QIANTU AND DOES 1 THROUGH 50)**

8         35.    Plaintiffs incorporate herein by reference each and every paragraph and

9    allegation of this Complaint as though fully set forth herein.

10        36.    On or about May 29, 2019, QIANTU represented to MULLEN that THE

11   PARTIES would enter into mutually agreeable schedules for payment and delivery, with all

12   essential terms, including exhibits with all schedules for payment, delivery of kits and

13   amounts to be attached to THE AGREEMENT upon mutual agreement. On that date,

14   QIANTU requested that MULLEN sign THE AGREEMENT without the exhibits setting

15   forth the schedule for payment and delivery.

16        37.    On or about May 29, 2019, when QIANTU made the above-referenced

17   representations and promises, QIANTU knew them to be false. In fact, on or about May 29,

18   2019, QIANTU intended to unilaterally impose essential terms and conditions on MULLEN

19   by unilaterally adding the exhibits with the essential terms and conditions at a later date.

20        38.    On May 29, 2019, when QIANTU made these promises, QIANTU knew them

21   to be false. QIANTU intended to deceive and defraud MULLEN and induce MULLEN to act

22   in reliance on these promises by having MULLEN sign THE AGREEMENT, or with the

23   expectation that MULLEN would rely on it by signing it.

24        39.    On May 29, 2019, when QIANTU made these promises, MULLEN was not

25   aware that QIANTU's promises were false. MULLEN was not aware that QIANTU intended

26   to unilaterally impose the essential terms and conditions contained in the exhibits into THE

27   AGREEMENT after MULLEN signed THE AGREEMENT. MULLEN believed that THE

28   PARTIES would mutually agree to the payment and delivery schedule after May 29, 2019.

40.     On May 29, 2019, in reliance on the false promises made by QIANTU about the terms to be added later, MULLEN signed THE AGREEMENT.  Had MULLEN known that QIANTU intended to unilaterally add the essential terms and conditions after MULLEN signed it without obtaining agreement from MULLEN, then MULLEN would not have signed THE AGREEMENT. As a proximate and legal result of QIANTU's intentional misrepresentation of these facts, MULLEN suffered the loss of property, legal rights and benefits to which MULLEN was otherwise entitled.

41.     The conduct of QIANTU in intentionally misrepresenting these facts was done with the intent to harm MULLEN, or with a conscious disregard for MULLEN's rights, so as to justify an award of exemplary and punitive damages.

## SIXTH CAUSE OF ACTION
## STATUTORY VIOLATION OF
## BUSINESS & PROFESSIONS CODE §17200, et seq.
## (AGAINST QIANTU AND DOES 1 THROUGH 50)

42.     Plaintiffs incorporate herein by reference each and every paragraph and allegation of this Complaint as though fully set forth herein.

43.     MULLEN is informed and believes that QIANTU's actions in unilaterally adding the terms and conditions of THE AGREEMENT after MULLEN signed it on or about May 29, 2019, as alleged herein, constitute unlawful, deceptive, unfair and or fraudulent business practices in violation of Business & Professions Code §17220, et seq.

44.     As a proximate result of QIANTU's intentional misrepresentation of these facts, MULLEN suffered the loss of property, legal rights and benefits to which MULLEN was otherwise entitled.

**WHEREFORE,** Plaintiff prays:

1.      For equitable relief in the form of a determination to be made of the rights and duties of Plaintiff and Defendant under the agreement;

2       For equitable relief in the form of reformation of the agreement, if any, to reflect the true terms and conditions of the agreement between THE PARTIES,

1         if any.

2     3.    For equitable relief in the form of rescission which is intended to place each of

3         THE PARTIES in the same condition and circumstance as each party had been

4         in prior to the alleged agreement, if any.

5     4.    For compensatory damages, including contract damages and statutory relief,

6         according to proof, but in an amount in excess of $15,000,000;

7     5.    For attorney fees pursuant to statute and, or contract;

8     6.    For prejudgment interest on damages certain or capable of being made certain;

9     7.    For punitive and exemplary damages;

10     8.    For costs of suit; and,

11     9.    For such other and further relief as the court may deem proper.

12

13 Dated: October 11, 2019                MILTNER & MENCK, APC

14

15                      By:    /s/ William L. Miltner

                            William L. Miltner, Esq.

16                          Walter E. Menck, Esq.

                         Attorneys for Plaintiff

17                          MULLEN TECHNOLOGIES, INC.

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT