UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULLEN TECHNOLOGIES, INC., a California corporation,<br><br>                                        Plaintiff,<br><br>v.<br><br>QIANTU MOTOR (SUZHOU) LTD., a limited liability company,<br><br>                                        Defendant. | Case No.: 3:19-CV-1979 W (AHG)<br><br>**ORDER:**<br>**(1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION PENDING CONCLUSION OF THE ARBITRATION PROCEEDING [DOC. 5]; AND**<br>**(2) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SANCTIONS [DOC. 13]** |

Pending before the Court is a motion to compel arbitration filed by Defendant Qiantu Motor (Suzhou) LTD ("Qiantu"). Qiantu has also filed a motion for sanctions. Plaintiff Mullen Technologies, Inc. ("Mullen") opposes both motions.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons that follow, the Court **GRANTS** Qiantu's motion to compel arbitration [Doc. 5.], **STAYS** this action pending the conclusion of the arbitration proceeding, and **DENIES WITHOUT PREJUDICE** Qiantu's motion for sanctions [Doc. 13].

## I. BACKGROUND

Qiantu is a Chinese company organized under the People's Republic of China, which manufactures and sells a sports vehicle known as the "K50" in China. (*P&A* [Doc.5-1] 1:21–22; *Compl.* [Doc. 1] ¶ 3.) In late 2017, Qiantu and Mullen began negotiating an agreement whereby Qiantu would sell to Mullen K50 vehicle kits, and Mullen would assemble the K50s and market them for sale in the United States. (*P&A* 1:22–27.) These negotiations resulted in the Exclusive Cooperation and Vehicle Assembly Agreement (the "Agreement"). (*Id.* 1:27–28.)

The first iteration of the Agreement (the "First Agreement") was signed by the parties on May 25, 2019. (*Heusel Decl.* [Doc. 5-2] ¶ 3, *Ex. A* [Doc. 5-4].) Shortly thereafter, Mullen wished to renegotiate the payment schedule, and Qiantu agreed. (*P&A* 2:9–17.) On July 30, 2019, after several weeks of renegotiation, the parties entered into an amended version of the First Agreement (the "Amended Agreement"), which superseded the earlier version in full. (*Id.* 2:20–25.) Mullen signed and acknowledged the Amended Agreement and initialed each page. (*Heusel Decl.* ¶ 10, *Ex. H* [Doc. 5-5].)

Relevant to the present motion are two articles in the Amended Agreement. The first is Article 4, governing the parties' "Payment Obligations and Security Thereof." (*Ex. H* Art. 4.) This provision identifies the following as "Payment Obligations":

> Mullen will pay to Qiantu, in accordance with Qiantu's General Terms and Conditions (except as to those terms that are specifically provided for in this Agreement), the invoicing and payment procedures set forth in Article 4.4, (a) the Fee associated with each Vehicle Kit delivered hereunder, as set forth in Article 4.3, and (b) the costs and expenses set forth in Article 4.2 (the "**Costs and Expenses**", or together with the Qiantu Fee, collectively, "**Payment Obligations**").

(*Id.* Art. 4.1) Based on this language, "Payment Obligations" involve: (1) invoicing and payment procedures set forth in Article 4.4; (2) the Fee associated with the delivery of each Vehicle Kit set forth in Article 4.3; or (3) the costs and expenses set forth in Article 4.2.

The second relevant article is 9, governing "Dispute Resolution." (*Ex. H* Art. 9.) Article 9.1 describes an internal dispute resolution procedure that applies to "any dispute, controversy or claim . . . other than relating to a Payment Obligation." (*Id.* Art. 9.1.) Subsection 9.2 then provides in relevant part:

> . . . Any dispute, controversy, difference or claim arising out of or relating to this Agreement, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre (SIAC) under the SIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The controlling law for resolution of any disputes herein shall be the law of the state of California, U.S.A. The seat of arbitration shall be Singapore. The number of arbitrators shall be one (1) and the proceedings shall be conducted in the English language.

(*Id.* Art. 9.2.)

After the parties entered into the Amended Agreement, a dispute arose regarding Mullen's Payment Obligations. On October 11, 2019, Mullen filed this lawsuit against Qiantu, alleging causes of action for breach of contract, declaratory relief, reformation, rescission, fraud, and violation of California Business & Professions Code § 17200. (*See Compl.*) Mullen alleges that on or about August 1, 2019, Qiantu unilaterally added certain exhibits to "THE AGREEMENT" that did not "conform with the terms and conditions to which THE PARTIES previously agreed" and "MULLEN did not agree to these payments or the accelerated schedule, which were unilaterally interposed by QIANTU." (*Id.* ¶¶ 19, 21.) Mullen further alleges that as a result of Qiantu's conduct, there exists an actual controversy between the parties in relation "to provisions related to the schedule, payment amount, and delivery of the kits." (*Id.* ¶ 27.)

In response to the Complaint, Qiantu filed the pending motions to compel arbitration and for an award of sanctions. Mullen does not dispute that this matter is subject to binding arbitration, but opposes arbitration in Singapore on the basis that it

3:19-CV-1979 W (AHG)

would be inconvenient and cause substantial hardship.  (*Opp'n* [Doc. 12] 1:16, 1:22–24.) Mullen also opposes the request for sanctions.

## II.    MOTION TO COMPEL ARBITRATION

### A.    Legal Standard

The Federal Arbitration Act ("FAA") provides: "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity."  9 U.S.C. § 2.  "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue."  Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015).

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

Additionally, "[a]n arbitration provision in an international commercial agreement . . . is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the 'Convention')."  Chloe Z Fishing Co., Inc. v. Odyssey Re (London) Ltd., 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000); 9 U.S.C. § 201 (The U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts).  Title 9 of the United States Code section 206 provides that "[a] court having jurisdiction under this chapter [9 USCS §§ 201, *et seq*.] may direct that arbitration be held in accordance with the agreement at any place therein provided for."

When a party in a suit subject to the Convention moves to compel arbitration under 9 U.S.C. § 206, "the substantive provisions of Chapter 2 of the FAA direct a court to perform a two-step analysis before referring the dispute to arbitration." Chloe Z Fishing Co., Inc., 109 F. Supp. 2d at 1241. The first step requires the court to "determine the existence of an arbitration agreement which falls under the Convention." Id. If the court finds the existence of such an agreement, it must order arbitration unless it finds the agreement "null and void, inoperative or incapable of being performed" under the Convention. Id.

### B. Is there an arbitration agreement that falls under the Convention?

In deciding whether the parties entered an arbitration agreement falling under the Convention, courts consider four questions: (1) is there a written agreement to arbitrate; (2) is the agreement commercial in nature; (3) does the agreement designate a country that is a signatory to the Convention; and (4) is a party to the agreement a foreign citizen or entity. Chloe Z Fishing Co., Inc., 109 F. Supp. 2d at 1243.

Here, Article 9.2 of the Amended Agreement constitutes a written agreement to arbitrate, and Mullen does not deny that this lawsuit involves a dispute over its Payment Obligations to Qiantu or that disputes involving such obligations are covered by Article 9.2. The agreement is also commercial because it concerns the manufacturing and distribution of K50 automobiles. (*Ex. H* Art. 1.1(jjj)-Art. 3.2(k).) The arbitration provision also states that the proceedings will be held in Singapore (*Id.*), which is a signatory to the Convention (*List of Contracting States*, http://www.newyorkconvention.org/list+of+contracting+states). Finally, Qiantu is a Chinese company organized under the People's Republic of China and, therefore, is not an American citizen. (*Compl.* ¶ 3.)

In addition to satisfying the first prong of the analysis under 9 U.S.C. § 206, the Amended Agreement also satisfies the FAA's first factor— i.e., the party seeking to compel arbitration must show the existence of a valid, written agreement to arbitrate.

Ashbey, 785 F.3d at 1323. Additionally, the parties' business relationship satisfies the FAA's second factor, that a party seeking to compel arbitration has the burden to show the agreement to arbitrate encompasses the dispute at issue. Id.

Based on the above factors, the Court finds the parties entered into an arbitration agreement that falls under the Convention.

### C. Is the arbitration agreement enforceable?

The next issue is whether the parties' agreement to arbitrate is "null and void, inoperative, or incapable of being performed. Chloe Z Fishing Co., Inc., 109 F. Supp. 2d at 1241. Only internationally recognized contract formation defenses or public policy concerns of the forum nation can render a valid agreement to arbitrate unenforceable under Article II of the Convention. Chloe Z Fishing Co., Inc., 109 F. Supp. 2d at 1258-59 (citing Oriental Commercial and Shipping Co., Ltd. v. Rosseel, N.V., 609 F. Supp. 75 (S.D.N.Y. 1985) (holding an agreement is only "null and void" when susceptible to internationally recognized defenses such as duress, mistake, or waiver, or when it contravenes fundamental policies of the forum nation).

Here, Mullen has not argued, much less demonstrated, any duress, mistake, fraud, or waiver associated with the arbitration provision in the Amended Agreement. Additionally, there is no indication arbitration conflicts with Singapore's public policy concerns.

Mullen nevertheless claims Singapore is an improper venue due to inconvenience. (*Opp'n* 1:22–24.) However, Title 9 of the United States Code section 206 provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for." By signing the Amended Agreement and initialing each page, Mullen agreed to arbitration with the SIAC in Singapore. Nor does Mullen provide any authority that would allow this Court to ignore the parties' agreed to venue. Accordingly, the Court finds the parties' agreement to arbitrate this dispute in Singapore is valid and enforceable.

**D.   Stay in proceedings.**

In a federal suit brought upon an issue referable to arbitration under a written agreement, the court in which the suit is pending "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."  9 U.S.C. § 3.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

Here, Mullen does not oppose Qiantu's request to stay this matter pending resolution of the arbitration.  Accordingly, the Court shall grant the parties' request to stay the action.

### III.   MOTION FOR SANCTIONS

Federal Rule of Civil Procedure 11 sanctions apply, among other reasons, when a party "present[s] to the court" "factual contentions [without] evidentiary support."  Fed.R.Civ.P. 11(b)(2-3).  Here, Qiantu's motion is based on the contention that the "Complaint contains numerous allegations that are directly contradicted by evidence" and that "[t]his evidence renders Mullen's claims factually baseless."  (*Sanctions P&A* [Doc. 13-1] 3–6.)  However, to date, Qiantu has not filed a motion to dismiss or motion for summary judgment that would require an evaluation of Mullen's factual allegations or claims.  To the contrary, Qiantu's position is that such evaluation should be done in arbitration before the SAIC.  Because the SAIC will decide Mullen's claims, this Court is concerned to the extent its factual findings may conflict with the factual findings made during the arbitration.  For these reasons, the Court will deny without prejudice Qiantu's motion for sanctions.  See McCright v. Santoke, 976 F. 2d 568, 569 (9th Cir. 1992) (acknowledging that, under certain circumstances, denying without prejudice a motion for sanctions pending further litigation may be warranted to develop a "fuller picture" of facts).

**IV.  CONCLUSION & ORDER**

For the reasons stated above, the Court **GRANTS** Qiantu's motion to compel arbitration [Doc. 5], **ORDERS** the parties to arbitrate this dispute before the SAIC in accordance with the terms of the Amended Agreement, and **STAYS** this action pending conclusion of the arbitration proceeding. The Court further **DENIES WITHOUT PREJUDICE** Qiantu's motion for sanctions [Doc. 13].

**IT IS SO ORDERED.**

Dated: July 1, 2020

_____
Hon. Thomas J. Whelan
United States District Judge